FILED

2012 APR 24 PM 2: 52

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1   PATRICIA BARBOSA (SBN 125865)
    SARA P. KUNKEL (SBN 260240)
2   **BARBOSA, METZ & HARRISON, LLP**
    139 Richmond Street
3   El Segundo, CA 90245
    Tel: (310) 414-9400
4   Fax: (310) 414-9200
    PBarbosa@bmhlegal.com
5   SKunkel@bmhlegal.com

6

7   Attorneys for Plaintiff,
    JESSE ACOSTA

8

9                 **UNITED STATES DISTRICT COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11                                              ● **CV12-3547**-MMM
                                                           (MAN)
12  JESSE ACOSTA,                 ) Case No.:
                                  )
13             Plaintiff,         ) <u>Civil Rights</u>
                                  )
14  vs.                          ) **COMPLAINT FOR INJUNCTIVE**
                                  ) **RELIEF AND DAMAGES** FOR
15  NUVISION FEDERAL CREDIT       ) DISABILITY DISCRIMINATION IN
    UNION, d/b/a E1 FINANCIAL CREDIT ) VIOLATION OF TITLE III OF THE
16  UNION; MUKAI MARAVILLA L.L.C., ) AMERICANS WITH DISABILITIES
17  a California limited liability corporation; ) ACT AND CALIFORNIA'S CIVIL
    E-W SERVICES, INC., d/b/a E&W  ) RIGHTS STATUTES (Health & Safety
18  SERVICES, INC., a California   ) Code § 19955 *et seq.*, Civil Code §§ 51,
19  corporation and subsidiary of EAST ) 54, and 54.1)
    WEST BANK, INC., and          )
20  HUNTINGTON COMMERCE           )
    CENTER, L.L.C., a California limited )
21  liability company;            )
                                  )
22                                )
                                  )
23             Defendants.        ) **DEMAND FOR JURY TRIAL**
24

25  ///

26  ///

27  ///

28

1      Plaintiff JESSE ACOSTA, by and through his undersigned Counsel, hereby
2 complains and alleges as follows:

## I.    INTRODUCTION

1.     Plaintiff JESSE ACOSTA ("Mr. Acosta" or "Plaintiff") is an active member of the U.S. Army and a veteran of the Iraq war. In January 2006, while serving a tour of duty in Iraq, Mr. Acosta was severely wounded in a mortar attack which resulted in total vision loss in both eyes. Plaintiff is blind and uses a guide dog and a cane at all times to assist him in while in public places. The mortar attack on Plaintiff also resulted in Traumatic Brain Injury (TBI) and musculoskeletal and nerve damage, resulting in significant difficulty walking or moving, constant pain, and impairment of his ability to engage in physical activity. Plaintiff has also been diagnosed with Post Traumatic Stress Disorder (PTSD), which causes him severe anxiety, difficulty concentrating, difficulty interacting with others, and emotional distress. Despite his significant impairments, Plaintiff founded and is the owner and operator of All Veterans Corp., a construction firm that seeks to help disabled veterans re-integrate into society by assisting them in finding gainful employment. Plaintiff is, and at all times relevant herein was, a qualified individual with physical and mental disabilities as defined by the Department of Justice regulations implementing the Americans with Disabilities Act ("ADA"), 28 C.F.R. § 35.104, and by California Government Code § 12926. Plaintiff is a resident of Santa Fe Springs, California, where he lives with his wife and children.

2.     On information and belief, Defendant NUVISION FEDERAL CREDIT UNION ("NuVision"), doing business as E1 FINANCIAL CREDIT UNION, is one of Southern California's largest financial credit unions with more than 780,000 members and multiple branches located throughout Los Angeles and Orange counties. It is headquartered in Huntington Beach, California. NuVision offers to its

1    members, among other products, personal banking services; merchant banking and

2    business services; savings, retirement and trust accounts; credit cards; insurance; and

3    real estate, vehicle, and personal loans. On information and belief, NuVision is the

4    owner, operator, and/or lessee of three branch offices located in the cities of Los

5    Angeles, Monterey Park, and Huntington Beach, California.

6         3.    On information and belief, Defendant NUVISION FEDERAL CREDIT

7    UNION ("NuVision"), doing business as E1 FINANCIAL CREDIT UNION, is the

8    owner and/or operator of three NuVision branch offices, which are the subject of this

9    Complaint: NuVision's branch office located at 157 S. Mednik Avenue, Los Angeles,

10   California 90022 ("NuVision – Los Angeles"); NuVision's Monterey Park branch,

11   located at 2095 S. Atlantic Boulevard, Monterey Park, California 91754 ("NuVision

12   – Monterey Park"); and NuVision's branch office located at 5912 Bolsa Avenue,

13   Huntington Beach, California 92649 ("NuVision – Huntington Beach").

14        4.    On information and belief, Defendant MUKAI MARAVILLA L.L.C. is

15   the owner, operator, lessor and/or lessee of the East Los Angeles Civic Center Plaza,

16   a commercial shopping center located in East Los Angeles.  The East Los Angeles

17   Civic Center Plaza houses the NuVision – Los Angeles branch office.

18        5.    On information and belief, Defendant E-W SERVICES, INC., doing

19   business as E&W SERVICES, INC., is the owner, operator, lessor and/or lessee of

20   the real property on which NuVision's Monterey Park branch is located.  On

21   information and belief Defendant E-W SERVICES, INC. is a subsidiary of EAST

22   WEST BANK, INC., a California corporation.

23        6.    On information and belief, Defendant HUNTINGTON COMMERCE

24   CENTER, L.L.C., is the owner, operator, lessor and/or lessee of the Huntington

25   Commerce Center, a commercial shopping center located in Huntington Beach.  The

26   Huntington Commerce Center houses the NuVision – Huntington Beach branch.

27        7.    Plaintiff is informed and believes that each of the Defendants is the

28

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
Case No.                                                                                3

1   agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer,

2   employee, representative, franchiser, franchisee, lessor, lessee, joint venturer, parent,

3   subsidiary, affiliate, related entity, partner, and/or associate, or such similar capacity,

4   of each of the other Defendants, and was at all times acting and performing, or failing

5   to act or perform, within the course and scope of such similar aforementioned

6   capacities, and with the authorization, consent, permission or ratification of each of

7   the other Defendants, and is personally responsible in some manner for the acts and

8   omissions of the other Defendants in proximately causing the violations and damages

9   complained of herein, and have participated, directed, and have ostensibly and/or

10   directly approved or ratified each of the acts or omissions of each of the other

11   Defendants, as herein described.

12

13                    **II.   JURISDICTION AND VENUE**

14         8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 to hear and

15   determine Plaintiffs' ADA claims. This Court has supplemental jurisdiction pursuant

16   to 28 U.S.C. § 1367 to hear and determine Plaintiffs' California claims because they

17   are related to Plaintiffs' federal claims and arise out of a common nucleus of

18   operative facts.

19         9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and is

20   founded on the fact that NuVision's headquarters and the branch locations in question

21   are located in the Central District, and Plaintiffs' causes of action arose in the Central

22   District.

23                    **III.   STATEMENT OF FACTS**

24

25   **A. NuVision's Discriminatory Loan Policies**

26         10.     Plaintiff JESSE ACOSTA is a long-time member of Defendant

27   NUVISION FEDERAL CREDIT UNION and its predecessors.  He has used

28   NuVision for his personal banking needs, his family's banking needs, and for his and

1   his family's personal loans.  Plaintiff alleges that NuVision unlawfully and

2   intentionally discriminated against him based on his disability by rescinding an

3   approved vehicle loan and agreeing to issue the loan only if Plaintiff agreed to new

4   loan terms and conditions, which were imposed on Plaintiff only after NuVision

5   discovered Plaintiff's blindness.  NuVision raised multiple sham excuses for

6   rescinding Plaintiff's approved vehicle loan, and then informed Plaintiff it would

7   provide him the approved loan only if Plaintiff opened a joint bank account with his

8   wife.  On information and belief, Plaintiff's allegations of intentional discrimination,

9   and the injuries caused to him, arise out of the approval, rescission, and

10  discriminatory terms and conditions placed on his loan due solely to Plaintiff's

11  disability.

12      11.    At all times relevant hereto, Plaintiff has had a personal checking

13  account with NuVision as well as other banking and credit-related accounts.  At all

14  times relevant hereto, Plaintiff used the services of the NuVision – Bolsa branch; the

15  NuVision – Los Angeles branch; and the NuVision – Monterey Park branch for his

16  banking needs.

17      12.    On or about November 9, 2011, Plaintiff contacted the NuVision branch

18  on Bolsa Avenue by telephone to apply for a $20,000 collateral loan on one of his

19  privately-owned vehicles.  Plaintiff sought to use the funds to help expand and

20  support his business, All Veterans Corp.  Plaintiff had experienced no problems

21  obtaining prior loans with NuVision, and had taken over his daughter's vehicle loan

22  several months prior, without the need to have a joint account with his wife, or agree

23  to any other discriminatory conditions because of his disability.

24      13.    On or about November 9, 2011, Plaintiff spoke with a NuVision – Bolsa

25  loan officer, whose name is not presently known to Plaintiff.  The loan officer asked

26  Plaintiff questions required to process the loan application over the telephone.  The

27  loan officer then asked Plaintiff to provide financial documentation of his ability to

28

1   carry and pay back the collateral loan.  Plaintiff was not asked provide proof of a

2   valid driver's license (since, due to his blindness, Plaintiff cannot obtain a driver's

3   license), nor did NuVision require Plaintiff to obtain a co-signer or provide evidence

4   of a joint account with his wife.  Plaintiff, who has been employed by the Southern

5   California Gas Company since 1986, gathered the requested financial documentation

6   and faxed the information to NuVision – Bolsa branch.

7        14.     The loan officer at the NuVision – Bolsa branch reviewed Plaintiff's

8   application and financial information.  Several hours later, the loan officer contacted

9   Plaintiff by telephone and informed him that, based on his application and proof of

10  financial status, he had been approved for the $20,000 collateral loan on his vehicle.

11  The loan officer told Plaintiff that he would need to come to the NuVision – Bolsa

12  branch to sign documents accepting the terms and conditions of the pre-approved

13  loan; terms and conditions that did not include the need to open a joint bank account

14  with his wife or to obtain co-signer to his loan.  The loan officer informed Plaintiff

15  that the money would be deposited into his personal checking account the same day

16  he signed the loan documents. At this time, Plaintiff and NuVision had reached an

17  agreement regarding the loan, and the terms and conditions for the loan.  The only

18  term not completed was for Plaintiff to visit the NuVision – Bolsa branch in person to

19  execute the approved loan documents.

20       15.     Later that afternoon, Plaintiff was driven to the NuVision – Bolsa office

21  by a co-worker to sign the documents required for his collateral loan.  Plaintiff

22  entered the NuVision – Bolsa branch office with his guide dog and cane, which he

23  takes with him at all times to assist in mobility and orientation.  Plaintiff met with

24  loan officers who presented him with the loan paperwork and reviewed its terms and

25  conditions with him.  Plaintiff signed the loan documents, completing the conditions

26  for his loan, and was told that the funds would be deposited into his personal

27  checking account "in less than one hour," or words to that effect.  Plaintiff then left

28

1   the NuVision – Bolsa office having completed and executed his approved loan

2   application.

3       16.     As Plaintiff and his co-worker were driving back to their office, Plaintiff

4   received two separate telephone messages on his cell phone from NuVision – Bolsa

5   employees.  Plaintiff returned one of the messages by calling the NuVision – Bolsa

6   branch office.   Plaintiff spoke with a female employee whose name on information

7   and belief is Martha Olmos.  Ms. Olmos informed Plaintiff that there was "a

8   problem" with his collateral loan application.  When Plaintiff asked Ms. Olmos what

9   the problem was, she replied, "You did not tell us you are blind," or words to that

10  effect.  Ms. Olmos then informed Plaintiff that there would need to be

11  "modifications" made to the terms of his loan, and asked him to return to the

12  NuVision – Bolsa branch to complete additional paperwork modifying his approved

13  and executed loan.  Plaintiff expressed shock and dismay that his loan was being

14  "modified" due to his blindness.  Plaintiff asked Ms. Olmos to transfer his call to a

15  representative of NuVision's corporate headquarters.

16      17.     Plaintiff's call was transferred to a female manager at NuVision's

17  headquarters.  On information and belief, this manager's name is "Diane."  Plaintiff

18  informed Diane that he had been approved for a collateral loan earlier that day after

19  answering the required questions and providing financial documentation proving his

20  ability to carry and pay off the loan, and that he had signed the loan documents at the

21  Bolsa branch office.  Plaintiff informed Diane that, after he went to the NuVision –

22  Bolsa branch and executed the loan agreement, he was later told by telephone that the

23  loan would have to be "modified" because he was blind.  Diane then informed

24  Plaintiff that his collateral loan was not being denied, but that its terms and conditions

25  had to be changed.  According to Diane, the loan needed to be modified because

26  Plaintiff did not have a valid California driver's license and because he did not have

27  car insurance in his own name.  Plaintiff asked Diane why these new "conditions"

28

1  had not been raised when he initially applied for the loan earlier that day.  Diane did

2  not answer his question.  Plaintiff then ended the telephone call and returned to work,

3  angry and hurt that he was being treated differently because of the blindness he

4  incurred in combat.

5       18.  A few hours later, Plaintiff placed a call to the NuVision – Bolsa office

6  and spoke again with Ms. Olmos.  Plaintiff informed Ms. Olmos that he continued to

7  need the collateral loan and wanted the situation rectified as soon as possible.  Ms.

8  Olmos informed Plaintiff that "the only way" NuVision would approve the collateral

9  loan was if Plaintiff opened a joint checking account with his wife, Consuelo Acosta.

10  The loan officer informed Plaintiff that the collateral loan funds could not be

11  deposited into Plaintiff's personal existing checking account, which is held in his

12  name only.  Plaintiff inquired why his wife needed to be a joint account holder in

13  order for him to receive the loan, and explained that his wife did not have her own

14  source of income – indeed, she had not worked outside of the home since Plaintiff

15  returned from Iraq with his life-threatening injuries in January, 2006.  Ms. Olmos

16  simply re-stated that Plaintiff could not receive the funds in an account held in his

17  own name.  She informed Plaintiff that, once the funds from the loan were deposited

18  into a joint checking account, the monies could be transferred to his personal

19  checking account and used at his discretion.  This sham, to open a joint account only

20  to receive the loan funds, affirmed to Plaintiff that Nu Vision's excuses for

21  "modifying" his loan were not based on any legitimate financial considerations, or his

22  lack of a driver's license, but solely on the basis of NuVision's discriminatory belief

23  that blind patrons could not be trusted to independently obtain loans.

24       19.  Plaintiff contacted his wife, who came to the NuVision – Bolsa branch

25  office to open the joint checking account.  After Plaintiff and his wife finished

26  creating their new joint checking account, Ms. Olmos asked Plaintiff and his wife to

27  re-sign his original loan paperwork, with Plaintiff's wife as co-signer for a loan she

28

1   did not seek and for which she could not have independently qualified, since she has

2   no independent funds or employment, and the vehicle used as collateral was in

3   Plaintiff's name alone.  Plaintiff and his wife re-signed the paperwork, and the loan

4   officer told them the money would be deposited into the joint account that day.

5       20.    As they signed the new loan paperwork, the manager of the NuVision –

6   Bolsa branch, who on information and belief is Mike Crawley, came to speak with

7   Plaintiff and his wife.  Mr. Crawley explained that NuVision could not give Plaintiff

8   a collateral vehicle loan because he did not have a California driver's license and

9   because he had been terminated from his car insurance.  Plaintiff explained to Mr.

10  Crawley that he had a valid California identification card, and that he was, in fact,

11  still on his car insurance.  Plaintiff also informed Mr. Crawley that NuVision – Bolsa

12  had approved him to take over his daughter's vehicle loan in 2010, which he was

13  successfully paying off, despite the fact that at that time he also did not have a

14  California driver's license.  Mr. Crawley expressed regret at the situation but

15  continued to insist that a joint checking account be opened for Plaintiff and his wife.

16  NuVision did not give Plaintiff any indication why a driver's license was required for

17  a collateral loan, or why a co-signer, without any evidence of independent income,

18  was required for him to obtain a loan based on solely on his independent financial

19  resources.  Plaintiff twice informed NuVision employees that he had never needed a

20  California's driver's license in the past to obtain a loan and that driver's licenses are

21  not available to blind persons.  Nonetheless, his loan was approved on the basis of

22  opening a joint account with his wife.

23      21.    Plaintiff and his wife completed paperwork to open the joint account

24  which NuVision required them to open to obtain the loan.  The $20,000 collateral

25  vehicle loan was deposited into the joint account that day.  Plaintiff was then forced

26  to transfer the loan funds from the joint account to his own, personal account, before

27  using the funds for the intended purpose.  The legal sham of requiring Plaintiff to

28

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
Case No.                                                                                          9

1  open a joint account, and then requiring his wife to co-sign for the loan, deeply

2  distressed, humiliated and angered Plaintiff, demonstrating to him that his disability

3  made him "less than" in the view of NuVision.  Plaintiff, who has been the sole bread

4  winner for some time for his family and who has fiercely fought for his independence

5  as a person with a disability, suddenly felt that he was "handicapped" and dependent

6  on others.

7          22.     Plaintiff experienced significant physical and emotional distress due to

8  Defendant's discrimination, which was blatant and based solely on his physical

9  disabilities.  Plaintiff was a combat veteran who lost his vision and suffered multiple

10  injuries while defending his country.  He is now blind, but continues to work full-

11  time, independently run his life and manage his money, without having others limit

12  his independence on the sole basis that he is blind.  Plaintiff is angered at the

13  condition placed by NuVision that he have a co-signer.  He is frustrated, angry, and

14  embarrassed that his collateral loan – which had already been approved and executed

15  – was later withdrawn with the blatantly false excuse that he needed a valid driver's

16  license, when it was his blindness that the loan officer first stated was the reason for

17  the need for a "modification" of his approved loan.    Plaintiff is saddened and

18  dismayed that he has had to overcome so many obstacles to return to an independent

19  civilian life, only to be told by Nu Vision that he is no longer considered an

20  independent man and must have his wife co-sign his loan, even though she is not

21  employed and does not have independent resources.   Plaintiff is also confused and

22  upset that NuVision's terms for a loan did not include the need for a driver's license

23  or a co-signer when he took over the loan from his daughter just a year earlier.

24  Plaintiff is disgusted and deeply offended that NuVision, who has profited from his

25  financial security for many years, so blatantly discriminated against him because he is

26  a disabled blind person.   The false excuses and sham "modifications" only

27  emphasizes to Plaintiff that NuVision considers him a blind dependent person, and

28

1   not the independent and financially resourceful man he is.  Plaintiff has been severely

2   injured and hurt by the blatant discrimination against him because he is blind.

3       23.     Plaintiff alleges that NuVision knowingly and intentionally denied him

4   the opportunity to participate in or benefit from its goods, services, and privileges –

5   obtaining a collateral vehicle loan, for which he had already been approved – based

6   on the false assumption, speculation, and stereotypes of unknown NuVision branch

7   and corporate employees that Plaintiff should not have been given the loan because of

8   his physical disability.  On information and belief, NuVision has failed to modify its

9   policies and procedures to ensure that Plaintiff and other persons with disabilities are

10  not arbitrarily and capriciously denied the ability to partake in NuVision's goods and

11  services.  Nu Vision has also implemented a discriminatory policy designed to keep

12  Plaintiff from independently obtaining a loan as a person with a disability, and has

13  implemented discriminatory administrative methods that have the effect of

14  discriminating on the basis of disability by "modifying" the conditions of Plaintiff's

15  loan agreement because of Plaintiff's blindness. On information and belief, Plaintiff's

16  approved and executed loan agreement was rescinded and later modified to deny him

17  the independence of obtaining a loan without a co-signer and a joint account because

18  Nu Vision discovered he was blind.

19

20  **B. Physical Barriers Encountered for Damages**

21      24.     As a person with physical disabilities, including sight and mobility

22  impairments, Plaintiff requires accessible facilities to independently use NuVision's

23  goods and services.  Plaintiff has encountered numerous access barriers that caused

24  him difficulty in, or deterred him from, accessing the goods and services offered by

25  NuVision in a manner equal to his able-bodied peers due to the physical barriers and

26  failure to modify its policies and procedures as described below.

27

28

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
Case No.

I.    **NuVision – Bolsa (Huntington Commerce Center)**

25.    The access barriers Plaintiff encountered when visiting the NuVision – Bolsa branch office and Huntington Commerce Center include, but are not limited to:

1. **NuVision – Bolsa Interior Barriers:**

   a) The automatic teller machine (ATM) in the NuVision – Bolsa lobby is inaccessible to persons with visual impairments because it lacks, among other things, any voice guidance features.  Plaintiff cannot use the ATM machine without a functioning voice guidance feature and all other accessible features needed for blind persons to use an ATM; and

   b) There are no lowered bank teller windows inside the branch, with a chair available for persons who cannot stand in line due to a disability. Plaintiff, who needs to frequently sit down to rest due to his nerve and musculoskeletal injuries, is forced to stand in line and use the excessively high teller windows to conduct his banking, which causes him pain and exacerbates his disabilities.

2. **Huntington Commerce Center - Exterior Barriers:**

   a) The single, designated van accessible parking stall at the northeast corner of the shopping center in front of the NuVision – Bolsa entrance has an excessively steep slope, rendering it dangerous to Plaintiff as he cannot safely navigate the excessive slope due to his blindness and mobility disabilities;

   b) The walkway adjacent to the accessible parking stall at the southeast corner of the shopping center has an excessively steep slope that is dangerous to Plaintiff as he cannot safely navigate the excessive slope due to his blindness and mobility disabilities.

3. **Restrooms:**

    a) The restrooms at the shopping center lack gender door signage used by blind persons to identify the correct gender restrooms; and

    b) The amenities in the restrooms, including toilet paper dispensers and toilet seat cover dispensers, are incorrectly located and obstruct access to the grab bars, which Plaintiff uses to stabilize himself when using the restroom and requires them to be free of obstructions.

**II.**    *NuVision – Los Angeles (East Los Angeles Civic Center Plaza)*

26.    The access barriers Plaintiff encountered when visiting the NuVision – Los Angeles branch office and East Los Angeles Civic Center Plaza include, but are not limited to:

    1. **NuVision – Los Angeles Interior Barriers:**

        a) The ATM on the exterior of the NuVision – Los Angeles branch is inaccessible to persons with visual impairments because it lacks a headphone jack and voice instructions for use. Plaintiff cannot use the ATM machine without a functioning voice guidance feature, and all other accessible features needed for blind persons to use an ATM; and

**III.**    *NuVision – Monterey Park*

27.    The access barriers Plaintiff encountered when visiting the NuVision – Monterey Park branch office and shopping center include, but are not limited to:

    1. **NuVision – Monterey Park Interior Barriers:**

        a) The ATM at the exterior of the NuVision – Monterey Park branch office is wholly inaccessible to persons with visual impairments because it lacks any type of voice guidance. Plaintiff cannot use the ATM machine without a functioning voice guidance feature, and all other accessible features needed for blind persons to use an ATM;

1    and

2    b)  There are no lowered bank teller windows or self-service

3        workstation counters inside the branch, with a chair available for

4        persons who cannot stand in line due to a disability. Plaintiff, who

5        needs to frequently sit down to rest due to his nerve and

6        musculoskeletal injuries, is forced to stand in line and , use the

7        excessively high teller windows to conduct his banking, which

8        causes him pain and exacerbates his disabilities.

9    **2. NuVision – Monterey Park Exterior Barriers:**

10   a)  The five designated "accessible" parking spaces near the NuVision

11       entrance lack an accessible path of travel from the parking space to

12       the NuVision branch entrance; there is no curb access provided

13       between the NuVision branch and two of the parking spaces; and the

14       paths of travel provided between the accessible parking spaces and

15       the NuVision branch require crossing over drive aisles, over

16       cobblestone concrete, and multiple gaps, posing a risk of injury to

17       Plaintiff as he must transverse this inaccessible path of travel to

18       reach the Nu Vision entrance;

19   b)  The accessible parking stalls and access aisles are excessively sloped

20       into an area drain, and the drain has gaps that are excessively wide,

21       posing a danger to Plaintiff as he cannot safely navigate the

22       excessive slopes and gaps due to his blindness and mobility

23       disabilities;

24   c)  The path of travel from the designated accessible parking stall at the

25       NuVision building pad to the NuVision branch entrance is not

26       accessible due to a protruding sign post that obstructs the path of

27       travel and an excessively steep slope, posing a danger to Plaintiff as

28

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
Case No.

he cannot safely navigate the excessive slopes and gaps due to his blindness and mobility disabilities;

d) The path of travel from the designated double accessible parking stall at the northeast of the NuVision building to the NuVision branch entrance is inaccessible because it is obstructed by signs and bolt extensions and is comprised of cobblestone texture that has noncompliant gaps, posing a risk of injury to persons with visual and mobility impairments;

e) The path of travel from the designated double accessible parking stall at the north of the NuVision building pad to the NuVision branch entrance contains excessive cross-slopes at the top of the designated accessible curb ramp; the path of travel encounters changes in level and openings greater than ½ inch; the entire path of travel running southeast has an excessively steep cross-slope; and there is no curb access between this building pad and the NuVision building pad at the intervening drive aisle, posing a risk of harm to Plaintiff and others with visual impairments.

## C. Notice of ATM Barriers at NuVision

28. Plaintiff attempted to learn to use the ATMs at NuVision when he first became blind. He found that the ATMs he attempted to use did not have voice guidance software that would assist him in activating his account. Without the voice guidance software, Plaintiff could not use the ATMs, as they are visually queued, and he could not see the screen directions. He notified the manager of the NuVision – Bolsa branch of his need for an accessible ATM. Plaintiff was told that NuVision's only ATM with voice guided software was located at the NuVision – Monterey Park branch. NuVision – Monterey Park is not the most convenient bank for Plaintiff.

Plaintiff is unable to use the convenience of the ATMs offered to the general public at the NuVision branches he regularly visits because Defendants have refused to install the accessible software and other accessible features to allow blind persons to use the ATMs at all of their branches.

29.   As a result of NuVision's discriminatory acts and omissions, Plaintiff has been, and will continue to be, denied full and equal access to the public accommodations offered to the general public and the benefits of the credit union, in violation of Federal and California anti-discrimination laws.  On information and belief, the above-mentioned denial of access to goods and services based on disability are ongoing, and constitute a continuing violation of Plaintiff's rights under Federal and California law for which NuVision is liable.

30.   Plaintiff enjoys being a member of NuVision Federal Credit Union, and has been a member of this credit union (in its various forms) for more than 20 years as it affords him unique services for himself, his family, and his business.  As such, Plaintiff would like to continue banking with NuVision without encountering discriminatory policies and physical access barriers that deny him full and equal use of the facilities and amenities, including inaccessible ATMs.  Plaintiff cannot continue banking with NuVision in a full and equal manner until the discriminatory loan policies are changed and the physical access barriers are removed at the Huntington Beach, Los Angeles, and Monterey Park facilities.

### D. Physical Barriers for Injunctive Relief

31.   On information and belief, the following access barriers exist at the NuVision – Huntington Beach, NuVision – Los Angeles, and NuVision – Monterey Park branches that preclude persons with visual and mobility disabilities from the full use and enjoyment of NuVision's goods and services:

*I.    NuVision – Bolsa (Huntington Commerce Center)*

**1. NuVision – Bolsa Interior Barriers**:

a)   The automatic teller machine (ATM) in the NuVision – Bolsa lobby is inaccessible to persons with visual impairments because it lacks contrasting function buttons, braille for most features such as the card insertion slot and cash retrieval, and ability to "blank" the screen; and,

b)   The counters in the bank are excessively high, without a lowered portion, rendering it unusable by persons who cannot stand for long periods and need a lower counter and chair, or wheelchairs.

**2. Huntington Commerce Center - Exterior Barriers**:

a.   There is no contrast striping on stair treads or landings;

b.   There is no tactile exit signage at the shopping center;

c.   The site entrance warning "tow-away" signage does not provide the required contact information, and the signage is not positioned to be discernible by all vehicles entering and traveling through the shopping center;

d.   The single designated parking space and lacks signage designating the spot for persons with disabilities and has an excessive slope with no access aisle provided;

e.   The curb ramp at the designated van accessible parking stall has border grooving located on the sloping portion of the ramp;

f.   There is no curb ramp providing access to the mailboxes near the NuVision – Bolsa branch, and the mailboxes are located out of accessible reach ranges; and

g.   There are multiple parking spaces and paths of travel throughout the shopping center that provide incomplete or no access to persons with mobility disabilities to entire areas of the shopping center or

businesses located therein.

**3. Huntington Commerce Center - Restrooms:**

n) There is insufficient door maneuvering clearance at the entrances to the restrooms, posing a risk of injury to persons with mobility disabilities;

o) There is insufficient door maneuvering clearance at the toilet compartment inside the restrooms, making it difficult or impossible for persons with mobility disabilities to fully and safely use the toilets;

p) There is insufficient toilet and urinal clearances and heights, causing a risk of harm to persons with disabilities;

q) The toilet hardware in inaccessible to persons with disabilities;

r) There is no insulation over drains or hot water pipes in the toilet lavatories, creating a risk of injury to wheelchair users.

**II.   *NuVision – Los Angeles (East Los Angeles Civic Center Plaza)***

**1. NuVision – Los Angeles Interior Barriers:**

a. The automatic teller machine (ATM) in the NuVision – Bolsa lobby is inaccessible to persons with visual impairments because it lacks contrasting function buttons, braille for most features such as the card insertion slot and cash retrieval, and ability to "blank" the screen.

b. There is no lowered self-service counter in the lobby rendering it unusable by persons in wheelchairs, and do not provide a place to sit for persons with limited mobility and strength, such as Plaintiff;

c. There is no tactile exit signage located at the interior side of the entrance and exit door; and

d. There is no lowered teller window, rendering it unusable to persons with mobility disabilities, and do not provide a place to sit for persons

1   with limited mobility and strength, such as Plaintiff.

2   **2. East Los Angeles Civic Center Plaza - Exterior Barriers**:

3   a) The center lacks signage directing persons with disabilities to the

4   accessible paths of travel;

5   b) There is no accessible path of travel connecting all four parts of the

6   shopping center;

7   c) The curb ramp outside the NuVision branch does not have side flares

8   or a barrier, presenting a tripping hazard to persons with visual

9   impairments.

10   **3.   *NuVision – Monterey Park***

11   **1. NuVision – Monterey Park Interior Barriers**:

12   a) The automatic teller machine (ATM) in the NuVision – Bolsa lobby

13   is inaccessible to persons with visual impairments because it lacks

14   contrasting function buttons, braille for most features such as the card

15   insertion slot and cash retrieval, and ability to "blank" the screen;

16   b) The self-service counter and computer work stations inside the

17   branch is higher than 34 inches, rendering it unusable by persons with

18   mobility disabilities, like Plaintiff who is unable to stand for long

19   periods of time, and could transact business while sitting;

20   c) The brochures and documents provided are not located within

21   accessible reach ranges; and

22   d) There are no tactile exit signs provided at the exit door inside the

23   branch.

24   **2. NuVision – Monterey Park Exterior Barriers**:

25   a) There is no tow-away warning signage at two of the four entrances to

26   the shopping center, and the signage that is provided displays

27   incorrect wording and is missing the required contact information;

28

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
Case No.

b)  There is no parking identification sign provided at the stall that contains the designated accessible signage;

c)  The accessible parking stalls and access aisles are not correctly marked, and the "no parking" sign is not correctly located;

d)  The designated double accessible parking stall at the northeast of the NuVision building pad has identification signs that are not reflective and improperly worded;

e)  The curb ramp at the designated double accessible parking stall at the northeast of the NuVision building pad has side flares that are excessively steep; lacks contrast between the ramp and walkway or parking stall; and has an improperly located border groove; and

f)  The designated double accessible parking stall at the north of the NuVision building pad has signage that is not reflective and the wording on the signage is incorrect; the stall and adjacent access aisles have excessively steep slope; and are shorter than 18 feet long.

**3.  NuVision – Monterey Park Restrooms**:

g)  The path of travel to the shopping center's restrooms on the second floor is not discernible because the elevator is hidden in an alcove, and there is no directional signage directing individuals to accessible paths of travel;

h)  The entrance door of the men's restroom at the second floor of the NuVision building pad lacks required minimum maneuvering clearance on the strike/pull side of the door; and the threshold is too high and abrupt, posing a risk of injury to wheelchair users;

i)  The toilet compartment door of the men's restroom at the second floor of the NuVision building pad lacks a handle on the inside, and the hardware require pinching or twisting of the wrist;

j) The toilet of the men's restroom at the second floor of the NuVision building pad is mounted too far from the wall; the grab bars are not mounted correctly and are mounted too high; and the grab bars do not extend far enough from the centerline of the toilet;

k) The lavatory of the men's restroom at the second floor of the NuVision building pad lacks insulation over the hot water pipes, and lacks covers over sharp objects protruding into knee space under the lavatory, posing a risk of harm to wheelchair users;

l) The coat hook in the of the men's restroom at the second floor of the NuVision building pad is mounted outside of accessible reach range; and

m) The paper towel dispenser of the men's restroom at the second floor of the NuVision building pad is mounted too high, outside of accessible reach ranges, and is equipped with inaccessible hardware.

## IV.   **INJURIES TO PLAINTIFF**

32.   As the direct result of Defendants' unlawful discrimination, Plaintiff has been, and continues to be, denied equal access to and the benefit of Defendants' goods, services, programs, and activities.  Based on his past positive experiences with NuVision, Plaintiff anticipated a straightforward loan application and approval process based on his status as a long- time NuVision member and financially stable, gainfully employed veteran. Instead, his application for a collateral vehicle loan was rescinded because he was blind, resulting in frustration, anger, anxiety, humiliation, embarrassment, and distress.  Plaintiff has also encountered numerous access barriers at the three NuVision locations he frequents.  Plaintiff has experienced frustration each time he tries to use NuVision's ATMs, none of which are fully accessible to persons with visual impairments, despite notice given to NuVision of the need to

update its ATMs to be accessible to persons with visual impairments. Unless enjoined from their discriminatory policies and practices, Defendants will continue to engage in the unlawful acts of discrimination described above. Plaintiff has no adequate remedy at law. Accordingly, Plaintiff is entitled to injunctive relief.

## V.   FIRST CAUSE OF ACTION:
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### TITLE III (42 USC §12101 *et seq.*)

33.    Plaintiff repleads and incorporates by reference herein the allegations contained in Paragraphs 1 through 32 of this Complaint.

34.    In 1990 the United States Congress found that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities", and that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem; that the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals; and that the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. §12101.

35.    As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities." 42 U.S.C. § 12181 *et seq.* Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of

public accommodation." 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

36.    Defendants have discriminated against Plaintiff on the basis of his disabilities in violation of Title III of the ADA and its implementing regulations. Defendants' discriminatory conduct includes, but is not limited to:

A.  Denying Plaintiff the opportunity to participate in or benefit from their goods, services, facilities, privileges, advantages, or accommodations based on his disabilities. 42 U.S.C. § 12182(b)(1)(A)(i); 28 C.F.R. § 36.202(a);

B.  Providing Plaintiff goods, services, facilities, privileges, advantages, and/or accommodations that are not equal to those afforded non-disabled individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b);

C.  Implementing administrative policies that directly or through contractual or other arrangements, utilize standards or criteria or methods of administration that had the effect of discriminating against Plaintiff on the basis that he is blind and physically disabled, and thereby not provided with the loan policies offered to the general public. 28 C.F.R. § 36.204;

D.  Failing to make reasonable modifications in policies, practices, or procedures, when necessary to afford Plaintiff its goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(a)(2)(A)(ii); 28 C.F.R. § 36.302(a);

E.  Failing to design and construct facilities built for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities. 42 U.S.C. §12183(a)(1); 28 C.F.R. §§36.401 *et seq.;*

F.  Since January 26, 1992, failing to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facilities are readily

accessible to and usable by individuals with disabilities in accordance with the ADA Standards. 42 U.S.C. § 12183(a)(2); 28 C.F.R. §§ 36.402, 36.403, 36.406(a);

G. Since July 26, 1991, failing to comply with the ongoing obligation to remove barriers, and/or provide path of travel upgrades to remove barriers at facilities where such removal is "readily achievable." 42 U.S.C. § 12182(a)(2)(A)(iv); 28 C.F.R. § 36.304.

Wherefore, Plaintiff prays the court grant relief as requested, herein below.

## VI.   SECOND CAUSE OF ACTION:
### Cal. Health & Safety Code §§ 19955 et seq.

37.   Plaintiff repleads and incorporates by reference herein the allegations contained in Paragraphs 1 through 36 of this Complaint.

38.   California Health & Safety Code §§ 19955 *et seq.* was enacted "[t]o ensure that public accommodations or facilities constructed in this state with private funds adhere to the provisions of Chapter 7 (commencing with §4450) of Division 5 of Title 1 of the Government Code." Such public accommodations are defined as any "building, structure, facility, complex, or improved area that is used by the general public…," and includes shopping centers (California Health & Safety Code § 19955.5); restaurants and related sanitary facilities (California Health & Safety Code §§ 19955); and curbs and sidewalks intended for public use (California Health & Safety Code § 19956.5).

39.   On information and belief, NuVision – Bolsa, NuVision – Los Angeles, and NuVision – Monterey Park and the shopping centers in which they are located underwent construction and/or alterations after January 1, 1982 that triggered access requirements pursuant to Title 24-2 of the California Code of Regulations (hereinafter "Title 24-2"). Pursuant to Title 24-2, compliance with disabled access

building standards and specifications is required whenever public accommodations, such as NuVision branch offices and the facilities related thereto, undergo an "alteration, structural repair or addition."  On information and belief, Defendants did not comply with the access requirements which Title 24-2 imposes on renovated and remodeled facilities, including but not limited to the requirements for accessible restrooms, parking, entrances, and accessible pedestrian paths of travel to the area of renovation or alteration.

40.    Pursuant to the remedies, procedures, and rights set forth in Health & Safety Code § 19953, Plaintiffs pray for judgment as set forth below.

## VII.  THIRD CAUSE OF ACTION:
## UNRUH CIVIL RIGHTS ACT (Cal. Civ. Code §51 *et seq.*)

41.    Plaintiff reallges and incorporates by reference herein the allegations contained in Paragraphs 1 through 40 of this Complaint.

42.    NuVision and its shopping centers are a "business establishment" and, as such, must comply with the provisions of the Unruh Act, Cal. Civ. Code § 51, *et seq.*

43.    The Unruh Act guarantees, <u>inter alia</u>, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the State of California.  Cal. Civ. Code § 51(b).

44.    The Unruh Act also provides that a violation of the ADA is a per se violation of the Unruh Act.  Cal. Civ. Code § 51(f).

45.    Defendants have violated the Unruh Act by denying, or aiding or inciting the denial of, Plaintiffs' rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered at NuVision – Bolsa; NuVision – Los Angeles; and NuVision – Monterey Park.

46.    Defendants have also violated the Unruh Act by denying, or aiding or

1    inciting the denial of Plaintiff's rights to equal access arising from the provisions of

2    the ADA.  A violation of the ADA is a *per se* violation of the Unruh Act. Cal. Civ.

3    Code § 51(f).

4        Wherefore, Plaintiff prays the court grant relief as requested, herein below.

5

6                    **VIII.  FOURTH CAUSE OF ACTION:**

7            **California Disabled Persons Act (Cal. Civ. Code §54 *et seq.*)**

8        47.    Plaintiff realleges and incorporates by reference the allegations

9    contained in Paragraphs 1 through 46 of this Complaint.

10       48.    NuVision – Los Angeles, NuVision – Monterey Park, and NuVision -

11   Huntington Beach and their facilities are places of public accommodation and/or

12   places to which the general public is invited and, as such, they are obligated to

13   comply with the provisions of the California Disabled Persons Act ("CDPA"), Cal.

14   Civ. Code, § 54, *et seq.*

15       49.    The CDPA guarantees, inter alia, that persons with disabilities have the

16   same right as the general public to the full and free use of the streets, highways,

17   sidewalks, walkways, public buildings, public facilities, and other public places. Cal.

18   Civ. Code § 54.

19       50.    The CDPA also guarantees, inter alia, that persons with disabilities are

20   entitled to full and equal access, as other members of the general public, to

21   accommodations, advantages, facilities, and privileges of covered entities. Cal. Civ.

22   Code § 54.1(a)(1).

23       51.    The CDPA also provides that a violation of the ADA is a *per se*

24   violation of CDPA, Cal. Civ. Code § 54.1(d).

25       52.    Defendants have violated the CDPA by, inter alia, denying and/or

26   interfering with Plaintiff's right to full and equal access as other members of the

27   general public to the accommodations, advantages, or facilities of the various

28

---

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
Case No.                                                                             26

1    NuVision branches and their facilities due to his disability.

2         Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code §§

3    54.3 and 55, Plaintiff prays for judgment as set forth below.

4

5                    **IX.   PRAYER FOR RELIEF**

6         WHEREFORE, Plaintiff respectfully requests:

7    53.   That this Court order injunctive relief pursuant to the ADA and Plaintiff's

8    related state law claims:

9              A. Ordering Defendants to stop discriminatory loan policies implemented

10                against persons with physical disabilities, such as the discriminatory

11                policies implemented against Plaintiff because he is visually impaired, to

12                ensure persons with disabilities are afforded equal access to their goods,

13                services, and programs ;

14             B. Ordering Defendants to alter their facilities to make them readily

15                accessible to and usable by individuals with disabilities, by removing

16                barriers identified by Plaintiff; and,

17             C. Prohibiting operation of Defendants' public accommodations until they

18                provide full and equal access to physically and mentally disabled

19                persons, and requiring that such access be immediately provided.

20   54.   That this Court award Plaintiff general, compensatory, and statutory

21   damages pursuant to the Unruh Act in an amount within the jurisdiction of this

22   Court, and that the amount be trebled based on the intentionally discrimination

23   Plaintiff suffered according to statute;

24   55.   That this Court award Plaintiff special and consequential damages according

25   to proof;

26   56.   That this Court award to Plaintiff all litigation expenses and costs of this

27   proceeding, and all reasonable attorneys' fees as provided by law; and

28

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
Case No.

57.     Such other and further relief as the Court may deem just and proper.

Dated: April 23, 2012                    **BARBOSA, METZ & HARRISON, LLP**


                              By:  _____
                                   PATRICIA BARBOSA
                                   SARA P. KUNKEL
                                   Attorneys for Plaintiff JESSE ACOSTA

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
Case No.                                                                28

## __DEMAND FOR JURY TRIAL__

1
2
3        Plaintiff hereby demands a jury for all claims for which a jury is
4   permitted.
5
6   Dated:  April 23, 2012                    **BARBOSA, METZ & HARRISON, LLP**
7
8                              By:    _____
9                                     PATRICIA BARBOSA
10                                    SARA P. KUNKEL
                                      Attorneys for Plaintiff JESSE ACOSTA
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
Case No.                                                                    29

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV12- 3547 MMM (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

PATRICIA BARBOSA (SBN 125865)
SARA P. KUNKEL (SBN 260240)
BARBOSA, METZ & HARRISON, LLP
139 Richmond Street, El Segundo, CA 90245
Tel: (310) 414-9400; Fax: (310) 414-9200
PBarbosa@bmhlegal.com; SKunkel@bmhlegal.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Jesse Acosta, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) v. | CV12-3547-mmm(MANx) |
| NuVision Federal Credit Union, d/b/a E1 Financial Credit Union; ADDITIONAL PARTIES ON ATTACHED LIST | SUMMONS |
| DEFENDANT(S). | |

TO:   DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Patricia Barbosa and Sara P. Kunkel___, whose address is _139 Richmond Street, El Segundo, CA 90245_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

**SEAL**

Dated: APR 2 4 2012

By: _____
MARILYN DAVIS
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CIVIL ACTION NO.: _____

## ATTACHMENT FORM TO SUMMONS IN A CIVIL ACTION

ADDITIONAL DEFENDANTS:

Mukai Maravilla L.L.C., a California limited liability corporation; E-W Services, Inc., d/b/a E&W Services, Inc., a California corporation and subsidiary of East West Bank, Inc., and Huntington Commerce Center, L.L.C., a California limited liability company

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Jesse Acosta

**DEFENDANTS**
NuVision Federal Credit Union, d/b/a El Financial Credit Union; Mukai Maravilla L.L.C., a California limited liability corporation; E-W Services, Inc., d/b/a E&W Services, Inc., a California corporation and subsidiary of East West Bank, Inc., and Huntington Commerce Center, L.L.C., a California limited liability company

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

PATRICIA BARBOSA (SBN 125865); SARA P. KUNKEL (SBN 260240)
Barbosa, Metz & Harrison, LLP, 139 Richmond Street, El Segundo, CA 90245
Tel: (310) 414-9400; Fax: (310) 414-9200

Attorneys (If Known)

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No        ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
VIOLATION OF TITLE III OF THE ADA AND CALIFORNIA'S CIVIL RIGHTS STATUTES (Civil Code §§ 51, 54, 54.1, and Health & Safety Code § 19955 et seq.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | PERSONAL PROPERTY | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 370 Other Fraud | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 371 Truth in Lending | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | BANKRUPTCY | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | REAL PROPERTY | IMMIGRATION | ☐ 444 Welfare | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 445 American with Disabilities - Employment | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☑ 446 American with Disabilities - Other | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | ☐ 440 Other Civil Rights | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Information Act | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**CV12-3547**

FOR OFFICE USE ONLY:    Case Number:

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX.  VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
    **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):**  _____   Date  April 23, 2012

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |